Minute Order Form (06-97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 833 | **DATE** | 2/26/2002 |
| **CASE TITLE** | HOLMAN vs. GILLEN, ETAL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 3/26/2002 at 10:00 A.M...
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (35-1) for summary judgment is denied. Count II of the amended complaint is dismissed as moot and dismisses plaintiff's equal protection claim.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 27 2002 | 40 |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| DW courtroom deputy's initials | | 02 FEB 26 PM 4:45 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD HOLMAN,

    Plaintiff,

v.

ARTHUR GILLEN, et al.

    Defendants.

No. 2000 C 0833

Judge James B. Zagel

FEB 2 7 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Holman, a prisoner in the custody of the Illinois Department of Corrections (IDOC), brought this pro se action against James Chrans, then Chief Administrative Officer (Warden) at Joliet Correctional Center, Arthur Gillen, former Assistant Warden of Programs, and James Utley, former Unit Superintendent of the Protective Custody Unit (PCU). Holman complained that there were no designated non-smoking cells in the PCU at Joliet, and that he had been required to share his cell with a smoker. Holman asserted that it violated the Equal Protection Clause of the Fourteenth Amendment for the prison to provide non-smoking cells for prisoners in the general population and prisoners in the disciplinary unit, but not for protective custody prisoners.

The defendants initially moved to dismiss the complaint, arguing that neither non-smokers nor protective-custody inmates constitute a protected class for purposes of the Equal Protection Clause. While accepting that proposition, I denied defendants' motion, pointing out that while the distinction between prisoners in the general population and prisoners in protective custody does not call for heightened scrutiny, defendants were required to show that treating protective custody prisoners differently bore some rational relation to a legitimate penal interest. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000); *Williams v. Lane*, 851 F.2d 867 (7th Cir. 1988). I also noted that Holman might be able to state a claim under the Eighth Amendment, since Holman had stated in a motion for preliminary injunction that had asthma and hypertension,

conditions that could be aggravated by exposure to smoke. Defendants were directed either to answer or file a motion for summary judgment. After receiving several extensions of time, defendants filed their motion for summary judgment on September 25, 2001, and the motion is ready for ruling.

**SUMMARY JUDGMENT PROCEDURE**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Seventh Circuit recently restated the procedure in *Outlaw v. Newkirk*, 259 F.3d 833, 836-37 (7th Cir. 2001). The moving party initially has the burden of identifying the appropriate documents in the record which it believes demonstrate the absence of a genuine issue of material fact. The moving party may meet this burden by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.

Once the moving party has met this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmovant must not merely demonstrate some factual disagreement between the parties; the factual dispute must be "material," one that could affect the outcome of the suit under governing law. Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is sufficient evidence favoring the nonmoving party to support a jury verdict for that party. In resolving the motion, the court must view the record and all reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party.

This court's local rule LR 56.1(a) requires a party moving for summary judgment to submit a statement listing the material facts it believes to be undisputed and which, taken together, entitle it to judgment as a matter of law. Local rule LR 56.1(b) requires the

nonmoving party to respond specifically to these allegations, and, where it denies that a fact is undisputed, to come forward with references to the record that support a contrary finding. Statements of fact not denied in accordance with the rule may be deemed admitted if properly supported by references to evidence in the record. *Curran v. Kwon*, 153 F.3d 481, 485-86 (7th Cir. 1998).

After the denial of their motion to dismiss, which had treated Holman's claim as arising under the Equal Protection Clause, defendants declined the invitation to show a rational basis for the lack of non-smoking cells for protective custody prisoners. Instead, their motion for summary judgment ignores the equal protection issue and treats Holman's claims as arising solely under the Eighth Amendment's prohibition of cruel and unusual punishment. In his response, Holman also ignores equal protection and argues that he has an Eighth Amendment claim. Since a plaintiff is not limited to the particular legal theory raised in the complaint if the facts of the case will justify relief on another theory, *see Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000), I will first address the complaint under the Eighth Amendment and then revisit equal protection.

Since defendants' motion was filed there has been a material change in the relevant facts. On September 24, 2001, Holman notified the court that he had been transferred to Stateville Correctional Center, and on January 30, 2002, that he has been transferred to Pontiac Correctional Center. Holman's claims for injunctive and declaratory relief are accordingly moot; the maximum-security unit at Joliet Correctional Center is in the process of being closed and there is no reasonable probability Holman will be returned there. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000). Count II of the amended complaint is dismissed as moot.

## ANALYSIS

### I. Eighth Amendment
#### A. Seriousness of Holman's Condition

A plaintiff attempting to state an Eighth Amendment claim based on conditions of confinement faces a high threshold: "[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)(citations and internal quotations omitted). Not only must the conditions complained of be, objectively, sufficiently severe. There is a subjective element as well: "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Holman is correct that it is possible to state an Eighth Amendment claim based on the plaintiff's exposure to environmental tobacco smoke. *Helling v. McKinney*, 509 U.S. 25 (1993); *Alvarado v. Litscher*, 267 F.3d 648 (7th Cir. 2001). He has not established, however, that the basic standards of human decency that constitute the lower limit of constitutional treatment of prisoners mandate a smoke-free environment for those who want it.

Holman argues that there is evidence that exposure to tobacco smoke is unhealthy, although he does not proffer any admissible evidence on this point. But accepting that as true, not every health risk imposed on prisoners is a potential Eighth Amendment violation. In *Carroll v. DeTella*, 255 F.3d 470 (7th Cir. 2000), the Seventh Circuit affirmed a grant of summary judgment for defendants, rejecting an inmate's complaint that levels of radium in excess of EPA standards in the prison drinking water violated the Eighth Amendment. The court observed that the level of radium contamination, while it carried a slightly heightened risk of

4

cancer, could not support an Eighth Amendment claim because it was not significantly different than that found in many municipal water supplies:

> Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment .... [F]ailing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.

*Id.* at 472-73 (citations omitted). While in recent years smoking has become less socially acceptable, smoking is still permitted in many workplaces and public areas where free Americans are exposed to it. Unless a plaintiff can show that exposure to environmental tobacco smoke presents an unusual risk to his health, it represents no more than part of the "routine discomfort" associated with penal incarceration.

Of the two prongs of an Eighth Amendment claim, objective severity and subjective indifference, defendants' Local Rule 56.1(a) statement of undisputed facts addresses only the former. Defendants assert that the following facts are undisputed:

> Plaintiff suffers no serious present medical condition which results from exposure to second hand smoke.
>
> In his visits to a physician at Joliet Correctional Center, Plaintiff was never ordered to be housed in a non-smoking cell.
>
> Plaintiff has no specific condition which will lead to an increased likelihood of future illness or injury due to exposure to second hand smoke.

Plf. Statement of Facts ¶¶ 8-10. In support of these assertions, defendants cite to pp. 28-31 of Holman's deposition, attached as an exhibit to the motion. Defendants did not offer Holman's medical records or any professional medical testimony.

While Holman has not specifically responded to defendants' Local Rule 56.1(a) statement, these statements will not be deemed admitted because they are not adequately supported by the record. Holman testified in his deposition that he has been diagnosed as asthmatic and uses an inhaler for relief at least three or four times a week. Holman Dep. pp. 28-29. He states that he

5

is "constantly coughing from the smoke," *id.*, p. 28, and suffers from runny eyes and nose, *id.*, p. 31. Holman has seen the doctor twenty or thirty times over the years for smoke-related problems, and might have gone more often if a fee had not been assessed for each visit. *Id.* at 30.

This evidence does not establish as a matter of law that Holman's suffering is constitutionally insignificant. While this is not a case of denial of medical care, the standard of objective seriousness employed in such cases is instructive. A "serious" condition is something that a reasonable non-hypochondriac would see as warranting medical treatment, a medical condition that left untreated could result in further significant injury or the unnecessary and wanton infliction of pain. *See*, e.g., *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1370-73 (7th Cir. 1997). I presume defendants would be liable if Holman had suffered from a persistent cough as a result of infection and defendants had denied him readily-available medication they knew would have cured him. It follows that if defendants knew that giving Holman a non-smoking cellmate would alleviate his constant cough, knew this was feasible, yet refused to arrange it, their refusal should likewise subject them to liability.

Defendants argue that Holman's symptoms are no worse than those dismissed on the pleadings in *Henderson v. Sheahan*, 196 F.3d 839 (7th Cir. 1999), or those that failed to survive summary judgment in *Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996). Nevertheless, there are significant differences in the posture of this case. The plaintiff in *Henderson* did not allege that a physician had diagnosed him as having a medical condition that necessitated a smoke-free environment or treated him for any condition brought about by his exposure to second-hand smoke--even though he had made several trips to medical facilities during his stay at the Cook County jail. *Henderson*, 196 F.3d at 846. Here, the record indicates that Holman has been treated for smoke-aggravated asthma. The defendants in *Oliver* had submitted an affidavit from a

6

treating physician stating that the plaintiff's asthma was "mild" and did not require that he be housed with a non-smoker. *Oliver*, 77 F.3d at 158. Here there is no such professional testimony in the record.

Holman's testimony does not establish, as defendants would have it, that a physician has not directed that he not be placed with a smoker. Holman doesn't say, one way or another. Defendants argue in their brief that if Holman needed to be placed with a non-smoker, "the doctor had every opportunity to order it and apparently did not think it necessary." Def. Br. at 8. But in deciding a motion for summary judgment I may not draw an inference *against* Holman, the non-moving party, in the absence of evidence that should have been readily available to defendants.

### B. Defendants' Deliberate Indifference

Defendants did not address the issue of deliberate indifference in their statement of material facts. In their brief, they argue that Holman cannot show the defendants' personal involvement in any constitutional deprivation, but their arguments fall short of establishing their position as a matter of law. Defendants' argument that receipt of letters or grievances is insufficient to establish personal liability, Def. Br. at 9-10, is mistaken. A prison official, put on notice of a constitutional violation by a prisoner's communication, may or may not be potentially liable, depending upon whether, among other things, the official had responsibility for correcting the problem, had authority to correct it, or reasonably relied on someone else to do so. *See, e.g., Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)("a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions

7

to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition").[1]

What defendants knew about Holman's problem, when they knew it, and what they could have done about it, all remain open questions. Defendants' reliance on an official policy of accommodating non-smokers to the extent practicable cannot justify summary judgment in the face of Holman's assertions in his deposition that the policy was not followed.

Defendants also point out that Holman has not documented some of his alleged complaints to the defendants, suggesting that they were never made. However, both Holman's original and amended complaints were made under penalty of perjury and have the force of affidavits. *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996). Defendants cannot meet their burden by asserting that Holman's sworn allegations are less than credible; credibility determinations are inappropriate on summary judgment. *Chavez v. Illinois State Police*, 251 F.3d 612, 634 (7th Cir. 2001); *Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir. 1993).

### C. Qualified Immunity

Since defendants have not shown, as a matter of law, that Holman's suffering from exposure to tobacco smoke was not of constitutional significance, defendants are not entitled to qualified immunity. Qualified immunity shields state officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Wilson v. Layne*, 526 U.S. 603, 609

---

[1] Assistant Attorneys General persist in making this argument, despite decisions of this court that have pointed out its fallacy in light of controlling Seventh Circuit precedent. See, e.g., *Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137 (N.D. Ill. 2001)(Lindberg, J.) at n.7; *Verser v. Elyea*, 113 F.Supp.2d 1211, 1215-16 (N.D.Ill. 2000)(Bucklo, J.). I agree with Judge Lindberg that this practice is ethically unacceptable if the same counsel who appeared in Goodman or Verser appear in this case. The Attorney General, whom I am sending a copy of this opinion by way of the Solicitor General ought to attend to this matter. The Attorney General is, of course, free to continue to challenge the controlling precedent but he should take steps to see that, in future filings, his assistants do not misrepresent the state of the law.

(1999). To evaluate a claim of qualified immunity, the court must engage in a two-step analysis. First, the court determines whether the plaintiff's claim states a violation of his constitutional rights. The court then determines whether those rights were clearly established at the time the alleged violation occurred. *Wilson,* 526 U.S. at 609.

The Seventh Circuit recently held in *Alvarado* that it was clearly established in 1999 that exposure to tobacco smoke could, if the effects were sufficiently severe, support an Eighth Amendment claim. *Alvarado* affirmed the district court's denial of a motion to dismiss on qualified-immunity grounds, leaving open defendants' argument here that under the particular facts of this case they could not reasonably have known that they were violating Holman's rights. Defendants have not shown as a matter of law that a reasonable person in defendants' position would have believed that Holman's discomfort was constitutionally insignificant, relieving them of liability for failure to take easily-available steps to ameliorate it. Summary judgment must be denied with respect to defendants' claim of qualified immunity as well.

## II. Equal Protection

Holman's original equal-protection theory was not addressed in defendants' motion nor in Holman's response. Here, however, the mooting of Holman's claim for prospective relief requires dismissal of this claim, since a claim for damages would be barred by qualified immunity.

In denying defendants' motion to dismiss I found that Holman had stated an equal protection claim; nevertheless, it would have been a novel one. Holman has not cited, nor have I found, any judicial opinions holding that failing to provide designated non-smoking cells violates the Equal Protection Clause if there are designated non-smoking cells for general-population prisoners.

True, *Williams v. Lane,* 851 F.2d 867, 881 (7th Cir. 1988), held that differential treatment of general population inmates and inmates in protective custody required some rational

9

justification. Nevertheless, this sort of general holding is not enough to defeat qualified immunity here. The right allegedly violated must have been defined at the "appropriate level of specificity" before a court can determine it was clearly established. *Wilson*, 526 U.S. at 615. "`[C]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wilson*, 526 U.S. at 614-15 (quoting *Anderson*, 483 U.S. at 640). Reasonable correctional officials were not on notice that their failure to provide designated non-smoking cells for protective custody inmates could be a constitutional violation. Defendants are accordingly entitled to qualified immunity on this claim.[2]

### III. Conclusion

Defendants' motion for summary judgment is denied. The court *sua sponte* dismisses Count II of the amended complaint as moot and dismisses Holman's equal protection claim on qualified immunity grounds pursuant to 28 U.S.C. § 1915(e)(2)(B). This case will proceed to trial on Holman's claim that defendants' placing him with cellmates who smoked amounted to deliberate indifference to a serious medical condition.

IT IS SO ORDERED.

James B. Zagel, Judge
United States District Court

DATED: 26 Jul 2002

---

[2] I also note that defendants have put forward a rational justification for their policy. Defendant Utley, the superintendent of the protective custody unit from October, 1999 to July 2000, stated in his affidavit attached to defendants' motion that because of the small size of the protective custody unit it was impossible to maintain a non-smoking section within the unit. I will not grant summary judgment on this ground, however, because it was not raised in defendants' statement of undisputed facts, nor was it argued in defendants' brief, so Holman did not have a proper opportunity to respond to it.

10