# United States District Court, Northern District of Illinois

| Name of Assigned Judge . or Magistrate Judge | JAMES B. ZAGEL | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 0833 | **DATE** | 12-16-2002 |
| **CASE TITLE** | Richard Holman, #N-06132 vs. Arthur Gillen, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order, the defendants' motion to supplement the record in lieu of reply [#56] is granted. The defendants' motion for summary judgment [#46] is also granted. The clerk is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.

(11) ■ [See Attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 17 2002 | 59 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| mjm | courtroom deputy's initials | 02 DEC 16 PM 4:47 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD HOLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 C 0833 |
| v. | ) | |
| | ) | U.S. District Judge |
| ARTHUR GILLEN, et al., | ) | James B. Zagel |
| | ) | |
| Defendants. | ) | **DOCKETED** |

**MEMORANDUM OPINION AND ORDER**      DEC 17 2002

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42

U.S.C. § 1983. The plaintiff claims that the defendants, officials at the Joliet Correctional

Center, violated the plaintiff's constitutional rights by acting with deliberate indifference to his

health, safety, and medical needs. More specifically, the plaintiff alleges that the defendants

denied him a smoke-free cell, thereby exposing him to a substantial risk of serious harm from

second-hand smoke.[1] This matter is before the court for consideration of the defendants'

renewed motion for summary judgment. For the reasons stated in this order, the motion is

granted.

The standards that govern this motion are familiar: Summary judgment "shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with affidavits, if any, show that there is no genuine issue as to any material fact

---

[1] By Memorandum Opinion and Order entered February 26, 2002, the court denied a previous motion for summary judgment but dismissed Count II, the plaintiff's equal protection claim. The court also dismissed as moot any request for declaratory or injunctive relief in light of the permanent closing of the Joliet Correctional Center.

and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). In determining whether factual issues exist, the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*; *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). If the moving party meets its burden, the responding party must then "come forward with facts 'sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.' " *Celotex*, 477 U.S. at 322; *Langston v. Peters*, 100 F.3d 1235, 1237 (7th Cir. 1996), *quoting Celotex*, 477 U.S. at 322.

## FACTS

The plaintiff is a state prisoner, confined at the Joliet Correctional Center at all times relevant to this action. (Defendants' Exhibit 7, Deposition of Richard Holman, *tr.* at 10-11.) The plaintiff is currently confined at the Pontiac Correctional Center. (Docket #39, Plaintiff's Change-of-Address Notice).

The defendant James Chrans was the warden of the Joliet Correctional Center at the time of the events giving rise to this lawsuit. (Amended Complaint, Count I, ¶ 2.) The defendant Arthur Gillen was the assistant warden of programs at Joliet. (*Id.*, ¶ 4.) The defendant James Utley was the unit superintendent for Joliet's protective custody unit. (*Id.*, ¶ 3.)

Viewed in the light most favorable to the plaintiff, the record presents the following facts: The plaintiff was housed in Joliet's West Cell House Protective Custody Unit from

2

approximately May1986 until the facility closed in 2001. (Defendants' Exhibit 7, Plaintiff's deposition, *tr.* at 10-11.)

Beginning in August of 1998, the plaintiff requested a non-smoking cell after the institution implemented smoking policies.. (Amended Complaint, ¶ 12.) However, at the time the plaintiff filed suit, the West Cell House Protective Custody Unit did not have cells specifically designated as non-smoking. (Plaintiff's deposition, *tr.* at 25-27; Defendants' Exhibit 5, Affidavit of James Utley, ¶ 5.) The protective custody unit was a small unit; it had only twenty-three cells and housed up to forty-six inmates at any given time. (Plaintiff's deposition, *tr.* at 25; Utley Affidavit, ¶ 4.) The unit's size and limited bed space, coupled with security considerations, made it "impossible" to maintain a non-smoking section. (Utley Affidavit, ¶ 5; *see also* Exhibit A to Amended Complaint, Memo from the defendant Gillen to former inmate Willie Williams dated December 9, 1998.)

Because the unit was a protective custody unit, the prison staff had to review every inmate's declared enemy list, his category of protective custody, his aggression level, his security level, his status as "vulnerable" or a "predator," his specific medical concerns, and the number of inmates housed there at the time of his placement. (*Id.*, ¶ ¶ 4, 7.).

The prison had specific policies in place to give preference to non-smokers with respect to non-smoking housing assignments. (Defendants' Exhibit 4, Affidavit of James Utley, ¶ 5; *see also* attached Administrative Directive 05.03.155; attached Institutional Directive 05.03.155.) The defendant Utley was generally uninvolved in making housing assignments (Utley Affidavit, ¶ 3). However, if an inmate requested a cell change because he was housed with a smoker, Utley

made "every effort" to accommodate the request after reviewing the above factors. (*Id.*, ¶ 7.) Nevertheless, considerations of safety and security issues, as well as available bed space, trumped smoking status. (*Id.*, ¶ ¶ 6, 7.)

The plaintiff suffers from no medical condition that requires him to be celled in a non-smoking cell or to have a non-smoking cellmate. (Defendants' Exhibit 3, Affidavit of Willard Elyea, M.D., ¶ 4.)

The plaintiff made frequent visits to Joliet's health care unit for attention to various medical issues while incarcerated at that facility. (*Id.*, ¶ 5.) None of the ailments for which the plaintiff sought treatment can be indicated as being caused or significantly aggravated by exposure to environmental tobacco smoke [hereinafter, "ETS"]. (*Id.*)

On several occasions when the plaintiff was seen and treated for non-smoking-related illnesses, his lungs were examined. (*Id.*, ¶ 10; *see also* Plaintiff's Medical Progress Notes dated April 14, 1998; June 23, 1998; August 4, 1998; June 22, 1999; July 29, 1999; August 5, 1999; November 24, 1999; and February 28, 2000.) Each time, the lungs were reported to be "clear." (*Id.*)

Although the plaintiff complained at his deposition of coughing, runny eyes and a runny nose when a cellmate smoked, those symptoms are "general, non-specific and temporary." (Elyea affidavit, ¶ 6; *see also* Plaintiff's deposition, *tr.* at 28, 31.) Furthermore, the plaintiff's medical records reflect no such complaints despite his numerous visits to the health care unit and opportunities to report those problems. (Elyea affidavit, ¶ ¶ 6, 11.)

The plaintiff has been receiving treatment for asthma for some time. (Plaintiff's Medical Records; deposition, *tr.* at 30.) He sometimes has tightness in his chest and trouble breathing and uses a spray pump when he experiences those problems. (*Id.*) However, the health care staff never believed the plaintiff's condition serious enough to issue a medical order placing him in a smoke-free cell. (*Id.*)

The plaintiff is also under care for hypertension (or high blood pressure). (Elyea affidavit, ¶ 7.) However, there is no evidence that the hypertension was caused or affected by exposure to ETS. (*Id.*) While those who are diagnosed with hypertension are advised not to smoke themselves, there is no significant medical evidence that exposure to second-hand smoke aggravates the condition or predisposes an individual to face significantly increased risk of other medical conditions. (*Id.*)

Nothing in the plaintiff's medical file indicates that he ever asked to be placed in a smoke-free cell for medical reasons. (*Id.*)[2] Nothing in the plaintiff's medical file suggests that he **needed** to be placed in a smoke-free cell for medical reasons. (*Id.*; *see also* Medical Progress Notes of July 8, 2002 (still no medical need for non-smoking status as of last health evaluation).

Medical studies of the effects of ETS on non-smokers base their findings on long-term exposure to ETS, generally a period of fifteen to twenty years. (Elyea affidavit, ¶ 9.) "To a reasonable degree of medical certainty," one would not expect to find any complications from

---

[2]The plaintiff points out that many of his medical records are too illegible for him to verify Elyea's assertions. However, that objection is groundless. With or without his medical records, the plaintiff would have known, and could have testified, whether he ever sought treatment for smoke-related problems. Because he has failed to contradict Elyea's statements, those statements will be deemed admitted.

ETS in an individual such as the plaintiff after four years' exposure to ETS. (*Id.*)[3] The plaintiff

suffers from no "unusual or significant risk" which makes him particularly vulnerable to ETS.

(*Id.*)[4]

The plaintiff never complained to the defendant Utley about his cell placement. (Utley

Affidavit, ¶ 8.) Utley was not aware of any health or medical condition of the plaintiff that

precluded his being housed with a smoker. (*Id.*)

The plaintiff never contacted Warden Chrans either about his placement in a smoke-free

cell or about any medical problems. (Defendants' Unmarked Exhibit, Affidavit of James Chrans,

former Warden of the Joliet Correctional Center, ¶ 4.) As warden, Chrans delegated housing

assignments to the cell house superintendent. (*Id.*, ¶ 3.) The warden was not personally involved

in making housing assignments. (*Id.*)

---

[3]The plaintiff contests this statement as "irrelevant, speculative, and wholly unsupported by any tangible evidence." (Opposing brief at p. 5.) However, the plaintiff misunderstands the burden of production in a Rule 56 motion. Elyea, a medical professional, is competent to testify that he is aware of no medical authority substantiating a claim that ETS could adversely affect an individual's health after only four years. At this stage of the proceedings, in order to overcome summary judgment, the plaintiff himself had to come forth with some medical evidence that ETS did, in fact, jeopardize his health. In fact, the court specifically reminded the plaintiff about the requirements of Fed. R. Civ. P. 56 and Local Rule 56.1 in ruling on the defendants' previous motion for summary judgment. *See also* Minute Order of January 24, 2001, as well as the defendants' July 10, 2002, "Notice to Pro Se Litigant Opposing Motion for Summary Judgment." The plaintiff has had almost two full years to develop his case and four months to respond to the motion for summary judgment. There is no "genuine issue" of fact regarding Elyea's assertion.

[4]The plaintiff's objection that Elyea has never personally examined him is irrelevant. Moreover, the plaintiff's contention that Elyea could not testify as to the accuracy of the plaintiff's medical records is immaterial since there is no suggestion that the records are, in fact, inaccurate.

The West Segregation housing unit had a ventilation system in place. (Defendants' Exhibit 6, Affidavit of William Schriever, former Chief Engineer at the Joliet Correctional Center, ¶ 3.) The ventilation system brought in fresh air from the outside and circulated the air in the cells on a continuous basis. (*Id.,* ¶ ¶3, 8.) Routine maintenance ensured proper functioning of the ventilation system. (*Id.,* ¶ 4.) The housing unit also had windows that could be opened to provide fresh air to the inmates. (*Id.,* ¶ 6.) In addition, smoke exhaust fans were provided for each gallery. (*Id.*) The windows and fans further facilitated air exchange. (*Id.*)

## DISCUSSION

There is no genuine issue as to any material fact, and the court finds that the defendants are entitled to judgment as a matter of law. Although the Constitution prohibits cruel and unusual punishment, "it does not require the most intelligent, progressive, humane, or efficacious prison administration." *Anderson v. Romero,* 72 F.3d 518, 524 (7th Cir.1995). While it is most unfortunate that second-hand smoke may have caused the plaintiff annoyance and discomfort, he has shown no actual harm. Nothing in the record suggests that the plaintiff had a medical condition necessitating that he be kept away from smoke-filled areas. *See Goffman v. Gross,* 59 F.3d 668, 672 (7th Cir. 1995); *Oliver v. Deen,* 77 F.3d 156, 159-160 (7th Cir. 1996). The question is not "whether it would be better or more enlightened" to enforce the rights of non-smokers. *Oliver,* 77 F.3d at 160. The plaintiff has failed to demonstrate that it was "contrary to current standards of decency" for him to be exposed to environmental tobacco smoke against his will. *Id., quoting Helling v. McKinney,* 509 U.S. 25, 35 (1993). The court is unpersuaded that the mere possibility of increased risk

7

of cancer or other smoke-related disease amounted to subjection to a "substantial risk of serious harm" prohibited by the Constitution.

**No Evidence of Exposure a Substantial Risk of Serious Harm**

As discussed in the court's Memorandum Opinion and Order of February 27, 2002, the Eighth Amendment prohibits deliberate indifference to inmates' health, safety, and medical needs. Failure to take reasonable measures in the face of a substantial risk of serious harm violates the Constitution. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). In order to establish Eighth Amendment liability, a the plaintiff must meet two requirements: first, he must show that the challenged conditions of confinement were objectively so serious as to amount to the denial of a basic human need; second, he must show that the defendant correctional official acted with deliberate indifference. *Id.* at 834. As the Court of Appeals has explained, "the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only to that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). In this case, the plaintiff has satisfied neither the objective nor the subjective prong.

First, the plaintiff offers no evidence that he was exposed to a substantial risk of serious harm. While involuntary exposure of an inmate to ETS may be actionable under 42 U.S.C. § 1983, the plaintiff must establish that the risk he faced was "not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993). Some medical experts suspect that long-term exposure to ETS may affect one's health. But the mere

8

possibility of potential health consequences is not the same as a "substantial risk of serious harm," particularly since the plaintiff was not subjected to long-term exposure. The plaintiff has adduced no evidence whatsoever that placement in a cell with a smoker laid him open to an unreasonable risk of harm. To the contrary, the court takes judicial notice that medical studies submitted as exhibits in *Nash v. Clark*, Case No. 99 C 5203 (N.D. Ill.), have been unable to establish "with any confidence that exposure to ETS involves a quantifiable risk of any particular health hazard." *Nash*, unpublished Memorandum and Order granting summary judgment entered August 29, 2002, at p. 12 (Zagel, J.).

Simply put, the possible health problems associated with the presence of ambient smoke are risks that society chooses to tolerate–both in and outside prisons. *Cf. Henderson v. Sheahan*, 196 F.3d 839, 847 (7th Cir. 1999), *cert. denied*, 530 U.S.1244 (2000) (summary judgment was warranted where the plaintiff complaining of exposure to second-hand smoke submitted only scientific and statistical data about the potential harm of ETS; he could not prove that he faced a serious, actual likelihood of developing future injury). *See also McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993) (upholding dismissal of an inmate's claim that his placement near asbestos-covered pipes violated his Eighth Amendment rights where the plaintiff failed to prove that he was exposed to unreasonably high levels of asbestos).

> [F]ailing to provide a maximally safe environment, one completely free from pollution or safety hazards is not [a form of cruel and unusual punishment]. Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.

*Carroll v. DeTella*, 255 F.3d 470, 472-73 (7th Cir. 2000) (affirming a decision granting summary judgment in favor of prison officials on an inmate's claim that radium in excess of EPA standards violated the Eighth Amendment). Since cigarettes remain legal and smoking is not banned in most public arenas, the plaintiff cannot argue that inmates are exposed to an intolerable risk in the prison setting. This case does not involve the substantial risk of serious harm necessary for Eighth Amendment liability.

The plaintiff appears to concede that he has suffered no real harm from his exposure to ETS. The defendants seek summary judgment based, in part, on 42 U.S.C. § 1997e(e), which dictates that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." In his opposing brief, the plaintiff asserts that an exception to 42 U.S.C. is warranted. But the Court of Appeals for this circuit has specifically upheld the physical injury requirement in cases based upon speculative injury. *See Zehner v. Trigg*, 133 F.3d 459 (7th Cir. 1997) (exposure to asbestos dd not satisfy the PLRA's physical injury requirement).

**No Evidence of a Serious Medical Condition**

The plaintiff's avowal that exposure to ETS has already caused harm is likewise wholly unsupported by the evidence and insufficient to defeat summary judgment. It is uncontested that, while confined at the Joliet Correctional Center, the plaintiff had numerous contacts with the prison health care staff. The plaintiff's medical records reflect no complaints about smoke-related problems. Furthermore, the plaintiff's medical records

reveal that the plaintiff's lungs were examined at least five times while at Joliet; although the health care providers were not specifically looking for smoking-related illness, each time the results showed that his lungs were "clear."

The fact that the plaintiff suffers from hypertension does not "constitutionalize" his complaint about having to endure second-hand smoke. As Dr. Elyea notes in his uncontroverted affidavit, there is no evidence that the plaintiff's hypertension was caused or exacerbated by exposure to ETS. Furthermore, while those who are diagnosed with hypertension are advised not to smoke themselves, there is no significant medical evidence that exposure to second-hand smoke aggravates the condition or predisposes an individual to face significantly increased risk of other medical conditions. (Elyea Affidavit, ¶ 7.)

In denying the defendants' earlier motion for summary judgment, the court noted that the plaintiff appeared to have been undergoing treatment for smoke-related asthma. *See, e.g., Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (where inmate claimed that high levels of ETS aggravated his chronic asthma and endangered his existing health, dismissal on the pleadings was not appropriate). But the more fully developed record fails to establish the existence of a special risk to the plaintiff's health posed by ETS.

There is no evidence in the record that any medical professional has ever believed the plaintiff's asthma serious enough to necessitate an order placing him in a smoke-free cell. Although the plaintiff complained at his deposition of coughing, runny eyes and a runny nose when a cellmate smoked, those symptoms are "general, non-specific and temporary." (Elyea affidavit, ¶ 6; *see also* Plaintiff's deposition, *tr.* at 28, 31.) *Compare Oliver*, 77 F.3d at 160

11

(summary judgment was appropriate where the defendants had submitted a treating physician's affidavit stating that the plaintiff's asthma was mild and did not require his being housed with a non-smoker).

Nothing in the plaintiff's medical file indicates that he ever asked to be placed in a smoke-free cell for medical reasons. (*Id.*) Nothing in the plaintiff's medical file suggests that he **needed** to be placed in a smoke-free cell for medical reasons. (*Id.*) In short, the plaintiff has never been treated for a smoking-related illness, and has never been diagnosed as having a chronic medical condition that mandates a smoke-free environment. The plaintiff states his subjective belief that second-hand smoke has affected or may affect his health, but he has adduced no evidence to support his assertions. To survive summary judgment, the plaintiff was required to show that there was a causal relationship between his exposure to second-hand smoke and the medical ailments he has suffered. *Oliver*, 77 F.3d at 161. He has failed to do so. There is no triable issue as to whether the plaintiff could prove to a reasonable degree of medical certainty that his particular medical conditions warranted a smoke-free environment.

**No Personal Involvement on the Part of the Named Defendants**

In addition to the factors set forth above, the defendants are entitled to judgment as a matter of law because they lacked personal involvement in any decision to deny the plaintiff a smoke-free cell. To be held liable under the Civil Rights Act, a defendant generally must have direct, personal involvement in the events giving rise to the lawsuit. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The doctrine of *respondeat superior* (blanket

12

supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983.  *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992).  To be held liable under the Civil Rights Act, the defendant "must know about the [constitutional violation] and facilitate it, approve it, condone it, or turn a blind eye. . . ."  *Gentry*, 65 F.3d at 561 (citations omitted).

It is undisputed that the defendants Utley and Chrans were uninvolved in routine inmate cell assignments.  *See* Utley Affidavit, ¶ 3; Chrans Affidavit, ¶ 3.  It is also undisputed that the plaintiff never complained directly either to Utley or Chrans about his cell placement.  (Utley Affidavit, ¶ 8; Chrans Affidavit, ¶ 4.)  The plaintiff's argument that the defendants should have been aware of his situation either through "publication" or through a "chain of command" theory is spurious.  The plaintiff's affidavits reflect complaints only to an officer West, who refused to change his cell assignment but who is not named as a defendant.  The fact that the defendants Utley and Chrans would have had the power to step in is immaterial.  The plaintiff has failed to establish that the defendants Utley and Chrans were personally involved in the circumstances giving rise to this action.

A closer call is whether the defendant Gillen was personally involved in the plaintiff's housing assignment.  Neither brief addresses Gillen's involvement, but the court questions whether the assistant warden would have taken part in cell house assignments.  Utley's affidavit, ¶ 3, indicates that the cell house captain or lieutenant would have been responsible for such a decision.  Three months after the plaintiff already filed suit, he contacted Gillen with a request for a cell or prison transfer in exchange for dropping the suit.  (See Plaintiff's

13

Exhibit B, Memorandum dated May 14, 2000.)[5] But even assuming that Gillen had direct, personal involvement, he is entitled to judgment as a matter of law for the alternative reasons discussed in this Memorandum Opinion and Order.

**No Evidence that the Defendants Were Deliberately Indifferent**

Even assuming *arguendo* that the plaintiff had (1) presented evidence that exposure to ETS exposed him to an excessive risk of harm, and (2) established that the defendants had direct involvement in the failure to honor his requests for a smoke-free cell, the court concludes that the defendants would nevertheless be entitled to summary judgment because there is no evidence that they were deliberately indifferent to serious any risk of harm to the plaintiff. For liability to attach, "[t]he infliction must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). "Liability under the Eighth Amendment requires punishment, and punishment requires more than negligence, whether ordinary or gross. It requires, at a minimum, that the prison officials have realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). "If the harm is remote rather than immediate, or the officials don't know about it or can't do anything about it, the

---

[5]The plaintiff, an experienced litigator, is advised for future reference that he should not discuss a pending case with defendants who are represented by counsel. Any attempts to settle a case should be made through the Assistant Attorney General assigned to the case.

subjective component is not established and the suit fails." *Del Raine v. Williford*, 32 F.3d 1024, 1038 (7th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 301 (1991)).

As discussed in preceding paragraphs, the defendants were unaware of any health or medical condition of the plaintiff that precluded his being housed with a smoker. To the contrary, the record is devoid of evidence that a medical professional ever issued an order that the plaintiff be placed in a smoke-free cell.

Aside from any medical need, the defendants have shown that they did attempt, in general, to accommodate the requests of non-smokers. The prison had a comprehensive smoking policy in place to separate smokers from non-smokers. *See* Utley affidavit and the administrative and institutional directives attached to his affidavit. Utley further asserts in his affidavit at ¶ 8 that "every effort" was made to place inmates in non-smoking cells upon request. The plaintiff contests whether the policies were strongly enforced, but he has not specifically contradicted any of Utley's factual representations.

The defendants do not dispute that non-smokers in the West Protective Custody Unit were sometimes housed with smokers, even when they requested a smoke-free cell. But the defendants have explained that the unit was too small to designate smoke-free cells. The unit's size and limited bed space, coupled with security considerations, made it "impossible" to maintain a non-smoking section. (Utley Affidavit, ¶ 5.) Because the unit was a protective custody unit, the prison staff had to review every inmate's declared enemy list, his category of protective custody, his aggression level, his security level, his status as "vulnerable" or a "predator," his specific medical concerns, and the number of inmates housed there at the time

15

of his placement. (*Id.*, ¶ ¶ 4, 7.). Thus, smoking status was only one factor in making housing assignments. There were simply more pressing concerns than smoking preferences. Security reasons can justify significantly more restrictive conditions on inmates in protective custody than those in the general population. *French v. Owens*, 777 F.2d 1250, 1256 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986).

The plaintiff argues that the cited security reasons were pretextual and that the defendants were actually only too "lazy" to find him a non-smoking cell, but he provides no evidence to substantiate that accusation. Even if smoking policies were imperfectly followed, the adoption of such policies reflect an attempt, within the limits of orderly prison administration, to separate smokers from non-smokers.

The plaintiff argues that the defendants could have chosen to transfer him to another prison if no smoke-free bed space was available in Joliet's West Protective Custody Unit. But the defendants had no constitutional obligation to do so. "Inmates cannot expect the amenities, conveniences and services of a good hotel. . . . [T]he society they once abused is obliged to provide [only] a constitutionally adequate confinement." *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988). Under the circumstances of this case, the prison's failure to place the plaintiff in a smoke-free cell does not reflect deliberate indifference. The record fails to support an inference that the defendants housed the plaintiff with smokers with the intent to harass, harm or punish him.

The defendants' good faith is further evidenced by their efforts to provide proper ventilation. The undisputed affidavit of Joliet's former chief engineer states that the

ventilation system brought fresh air from the outside and circulated the air in the cells on a continuous basis. Schriever additionally testified that the housing unit had windows and smoke exhaust fans that further facilitated air exchange. There is no triable issue as to whether the defendants intentionally subjected the plaintiff to discomfort or suffering. In this case, deliberate indifference cannot be attributed to the defendants since there was no statute or case law—or even a definitive medical study—dictating that individuals should not be exposed to ETS.

**Qualified Immunity**

Finally, even assuming for purposes of argument that the defendants' failure to provide a smoke-free environment did violate the plaintiff's constitutional rights, the court finds that they are entitled to qualified immunity. Under the doctrine of qualified immunity, state officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To evaluate a claim of qualified immunity, the court must engage in a two-step analysis. First, the court determines whether the plaintiff's claim states a violation of his constitutional rights. Then, the court determines whether those rights were clearly established at the time the alleged violation occurred. *See Wilson*, 526 U.S. at 609; *Khuans v. Sch. Dist. 110*, 123 F.3d 1010, 1013 (7th Cir. 1997). Only if the rights were clearly established may the official be liable for monetary damages. *See Richardson v. McKnight*, 521 U.S. 399, 403 (1997)

17

A clearly established right is one where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "Because there is an almost infinite variety of factual scenarios that may be brought into the courtroom, a the plaintiff need not point to cases that are identical to the presently alleged constitutional violation." *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). Nevertheless, an official will not be individually liable unless "the contours of the right . . . have been established so that the unlawfulness of the defendant's conduct would have been apparent in light of existing law." *Id., citing Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 430 (7th Cir. 1989), *cert. denied*, 498 U.S. 949 (1990).

In this case, the court is satisfied that the defendants are entitled to qualified immunity because neither statutes nor case law have established a right of inmates to a smoke-free environment. While inmates are plainly entitled to an environment that does not expose them to an intolerable risk of harm, the adverse effects of ETS are too speculative and too remote to mandate an absolute rule that prisons be given a smoke-free cell upon request. Previous cases on second-hand smoke could not have put the defendants on notice that a failure to assign him to a smoke-free cell was unconstitutional. The defendants did not violate a clearly established right.

## CONCLUSION

In sum, even viewing the evidence in the light most favorable to the plaintiff, no reasonable person could find either that the plaintiff faced an unreasonable risk of harm from ETS or that the defendants acted with callous indifference to that risk. In addition, the named

18

defendants lacked personal involvement in any decision regarding the plaintiff's housing assignment. Moreover, all of the defendants are entitled to qualified immunity because they violated no clearly established rights. For all of the foregoing reasons, the defendants' motion for summary judgment must be granted.

If the plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(4). Because the plaintiff has already "struck out" for purposes of 28 U.S.C. § 1915(g) and this case does not involve imminent danger of serious physical injury, the appellate docketing fee of $105 must accompany any notice of appeal.

IT IS THEREFORE ORDERED that the defendants' motion to supplement the record in lieu of reply (docket # 56) is granted. The clerk is directed to file the complete, notarized affidavits for the unexecuted affidavits originally submitted with the motion for summary judgment.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment (docket #46) is granted. The Clerk is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to FED. R. CIV. P. 56. The case is terminated. The parties are to bear their own costs.

ENTER:

Dated: 16 Dec 2002

JAMES B. ZAGEL
United States District Judge

19